1
2
3
4
5
6
7          **IN THE UNITED STATES DISTRICT COURT**

8          **FOR THE EASTERN DISTRICT OF CALIFORNIA**

9

10   ROBERT D. GIBSON,                    )     Case No. 2:09-cv-00230-MSB
                                          )
11          Plaintiff,                    )     **ORDER**
                                          )
12   vs.                                  )
                                          )
13   CHIEF MEDICAL OFFICER, C.D.C.R.,)
     *et al.*,                            )
14                                        )
            Defendants.                   )
15   _____ )

16          Plaintiff Robert D. Gibson, who is currently confined in the Salinas Valley State

17   Prison in Soledad, CA, has filed an amended *pro se* civil rights Complaint under 42 U.S.C.

18   § 1983 (Dkt. # 18) pursuant to the Court's April 9, 2010 order dismissing Gibson's Second

19   Amended Complaint for failure to state a claim upon which relief may be granted and

20   granting him leave to amend his complaint (Dkt. #14).   After screening the complaint

21   pursuant to 28 U.S.C. § 1915A, to the extent discussed below, the Court will dismiss with

22   prejudice the Third Amended Complaint (Dkt. #18) for failure to state a claim upon which

23   relief may be granted.

24   **I.     Statutory Screening of Prisoner Complaints**

25          The Court is required to screen complaints brought by prisoners seeking relief against

26   a governmental entity or an officer or an employee of a governmental entity.  28 U.S.C.

27   § 1915A(a).  The Court must dismiss a complaint or portion thereof if a plaintiff has raised

28

1  claims that are legally frivolous or malicious, fails to state a claim upon which relief may be

2  granted, or seeks monetary relief from a defendant who is immune from such relief. *Id.* at

3  § 1915A(b)(1), (2).

4  **II.     Third Amended Complaint**

5          In his Third Amended Complaint,[1] Gibson presents four causes of action: 1) that 42

6  U.S.C. §1997e is unconstitutional because it is a   Bill of Attainder, violates the First

7  Amendment because it blocks access to the courts, violates his Seventh Amendment right to

8  a civil trial, and violates the Ninth Amendment; 2) that California Penal Code §§ 2600-2601

9  is unlawfully applied to him ex post facto because it was enacted after he was sentenced;[2] 3)

10 that the defendants have violated the Eighth Amendment because they failed to provide him

11 treatment for Hepatitis C; and 4) that the prison's poor food diet and unsanitary conditions

12 violate the Eighth Amendment.  (Dkt. #18 at 27–28).  These causes of action are identical

13 to the causes of action presented in Gibson's Second Amended Complaint.  (Dkt. #11 at

14 18–22).   The Third Amended Complaint includes additional defendants and factual

15 allegations.

16         Gibson names the following parties as defendants: (1) Arnold Schwarzenegger,

17 Governor of the State of California (Dkt. #18 at 2–3); (2) Robin Dezember, the Director of

18 the Division of Correctional Health Care Services of the California Department of

19 Corrections and Rehabilitation (*id.* at 3); (3) the Chief Dietitian of the California Department

20 of Corrections (*id.*); (4) Susan Lapsey, Director of the Office of Adminstrative Law (*id.* at

21 4); (5) Kathleen Eddy, Senior Counsel of the Office of Administrative Law (*id.*); (6) Warden

22

23         [1]Gibson amended his complaint as a matter of course under FED. R. CIV. P. 15(a)(1)

24 (Dkt. #5), and the Court granted his motion to file a Second Amended Complaint under FED.
   R. CIV. P. 15(a)(2) before screening the complaint under 28 U.S.C. §  1915A.  (Dkt. #s 11,

25 14).

26         [2]California Penal Code § 2600 provides that "[a] person sentenced to imprisonment
   in a state prison may during that period part  of confinement be deprived of such rights, and

27 only such rights, as is reasonably related to legitimate penological interests."  California
   Penal Code § 2601 specifics certain civil rights that prisoners retain during their term of

28 imprisonment.

- 2 -

of the Salinas Valley State Prison (*id.* at 3, 4); (7) Chief Medical Officer of the Salinas Valley State Prison (*id.*); (8) Food Manager of the Salinas Valley State Prison (*id.* at 5); (9) Edmund G. Brown, Attorney General of California (*id.* at 6); (10) Trace Maiorino, Deputy Attorney General of California (*id.*); (11) Kellis M. Hammond, Deputy Attorney General of California (*id.*); and (12) William Cashdollar, Deputy Attorney General of California (*id.* at 7).  Only Defendants (1)–(3) and (8)–(12) were named in the Second Amended Complaint. (Dkt. #11 at 2–5).

Gibson alleges that he has Hepatitis C genotype 1b, which is an infectious disease affecting the liver.  (Dkt. #18 at 8–9).  According to Gibson, the Hepatitus C virus "is responsible for nearly 70 percent of chronic liver disease and 50 percent of liver cirrhosis, end-stage disease, and eventually cancer of the liver." (*Id.* at 8).  Gibson alleges that "[i]f [a] patient is infected with genotype 1, then he should be offered a liver biopsy," and "[o]nce [the] patient is determined to have chronic hepatitis, then he should be [treated] with a combination of two drugs"—"Pegylated interferon and Ribavirin for 48 weeks for genotype 1[b]." (*Id.* at 9).

Gibson states that he "has received several biops[ies] of [his] liver," and that, as of March 16, 2010, the defendants began treating him with Pegylated interferon and ribavirin. (*Id.*).  "[B]ut," according to Gibson, "the delay has been too great and injury has occurred." (*Id.*).  Specifically, Gibson alleges that "[t]he defendant's scheme of years of inaction and delay has guaranteed that any treatment will fail." (*Id.* at 12).  Gibson then points to a September 22, 2008 memorandum from Terry Hill, M.D., Chief Executive Officer, Medical Services, California Prison Health Care Receivership, alleging that "[t]he Defendant's policies to delay and to deny care have been intentionally promulgated and [executed] for financial reasons in complete disregard for the medical needs of [p]risoners infected with [Hepatitis C]." (*Id.*).

Gibson also alleges that "the Defendants are now engaged in conditioning [his] medical treatment upon a dress code," such that "failure to comply with [the] dress code is grounds for the . . . cancell[ation] [of] medical appointments and treatment." (*Id.* at 10).

1    Specifically, Gibson alleges that he "attempted to go to a medical appointment . . . . [and] did

2    not have a pair of cheap dirty State issued tennis shoes, [but] instead . . . had on a pair of

3    new, clean white, (personal bought) tennis shoes on [and] his . . . appointment was

4    cancelled." (*Id.*).  Additionally, Gibson alleges that the defendants have "[promulgated]

5    policies[] and practices that are design[ed] to cause [his] medical treatment to fail [by]

6    [a]llowing guard staff to interrupt medical consultations, to yell and scream at [him] during

7    medical visits while [he] is under the influence of powerful anti-viral drugs," causing him

8    "a) fatigue and weakness[,] b) headaches[,] c) body, muscle, and joint pain, d) fever, e)

9    irritability, anxiety, and nervousness[,] f) low white blood cell count[, and] g) depression."

10   (*Id.* at 11).  Specifically, Gibson alleges that "[t]he guards in the hospital facility. . . are

11   trained to yell out orders . . . at sick patients to anger or stress [them], for things like, 'Pull

12   up your pants,' 'No wearing of hats in the building,' [and] 'Hands behind your back[.]'" (*Id.*

13   at 14).

14          In addition, Gibson alleges that the prison food is unsanitary and "contribut[es] to

15   [his] bad health." (*Id.* at 15).  According to Gibson, the prison food is sometimes stored

16   outdoors and left uncovered, and is "sodium laced" and "lacks any nutritional value." (*Id.*).

17   Additionally, Gibson alleges that the prison "meat is routinely burnt or spoiled" (*id.*), food

18   items are consistently missing from his daily "brown bag" lunch, he was once "made very

19   sick from rotten eggs," he once found insect remains in his cereal, and he once received

20   orange sherbet that "was clearly spoiled" and "would have caused [him] food poisoning" if

21   he had consumed it (*id.* at 16).  Furthermore, Gibson alleges that his medical treatment

22   "requires a high protein and caloric diet, not [the] mush and gruel[] of every type and

23   description[]" that he receives in prison, and, "without an adequate diet[,] the drugs may not

24   work." (*Id.* at 17).

25          Finally, Gibson alleges that (1) the defendants were negligent and committed

26   malpractice when they performed a liver biopsy procedure on him that was "incompetent"

27   and "botched" (*id.* at 13); (2) the California Attorney General's office engaged in a "[p]attern

28   of [r]acketeering [a]ctivity" by using false affidavits and tampering with witnesses in three

earlier civil rights cases Gibson filed (*id.* at 18–19); (3) Cal. Penal Code §§ 2600–2601 are unlawfully applied ex post facto to him because they were enacted in 1994, several years after he had been sentenced (*id.* at 23–24); and (4) 42 U.S.C. § 1997e is an unlawful bill of attainder and violates the First, Seventh, and Ninth Amendments by making prison grievance procedures a prerequisite for filing a lawsuit and making litigation difficult for prisoners, despite "full knowledge of the tyrannical acts of [s]tate [o]fficials" (*id.* at 20–21). These allegations are mostly identical to the allegations contained in the Second Amended Complaint. (Dkt. #11 at 10–12, 14–18). The only new allegations regarding issues (3) and (4) are a statement that Cal. Penal Code §§ 2600–2601 "and the many new prison regulations it [has] spawn[ed] . . . '[h]ave created a sufficient risk of increasing the plaintiff's current sentence or punishment'" (Dkt. #18 at 24), a citation to a Harvard Law Review article stating that 42 U.S.C. § 1997(e) makes it difficult for prisoners to bring lawsuits (*id.* at 22), a citation to other prisoner's declarations of their problems with prison grievance procedures (*id.*), and allegations that the Office of Administrative Law violated his equal protection rights by "refus[ing] to order the repeal" of parts of the California Code of Regulations (*id.* at 25–26).

**III. Discussion**

42 U.S.C. § 1983 provides a cause of action against persons acting under color of state law who have violated rights guaranteed by the U.S. Constitution. *Buckley v. City of Redding*, 66 F.3d 188, 190 (9th Cir. 1995); *Demery v. Kupperman*, 735 F.2d 1139, 1146 (9th Cir. 1984). To state a claim for relief under § 1983, a plaintiff must allege that he suffered a specific injury as a result of a defendant's specific conduct and show an affirmative link between the injury and that defendant's conduct. *Rizzo v. Goode*, 423 U.S. 362, 371-72, 377 (1976).

**A. Pleading Standard**

*Pro se* pleadings are to be liberally construed. *Hains v. Kerner*, 404 U.S. 519, 520-21 (1972). Nonetheless, a *pro se* plaintiff must satisfy the pleading standard set forth in the Federal Rules of Civil Procedure, which requires a "short and plain statement of the claim *showing* that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2) (emphasis added). In

addition, "[e]ach allegation must be simple, concise, and direct."  Fed. R. Civ. P. 8(d)(1).
While Rule 8 does not demand detailed factual allegations, "it demands more than an
unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 129 S. Ct.
1937, 1949 (2009).  "Threadbare recitals of the elements of a cause of action, supported by
mere conclusory statements, do not suffice."  *Id.*  If the Court determines that a pleading
could be cured by the allegation of other facts, a *pro se* litigant is entitled to an opportunity
to amend his complaint.  *See Lopez v. Smith*, 203 F.3d 1122, 1127-29 (9th Cir. 2000) (*en
banc*).

## B.     Similar Allegations

The  allegations  in  Gibson's  Third  Amended  Complaint  concerning  the
constitutionality of 42 U.S.C. § 1997e, the application of Cal. Penal Code §§ 2600–2601, and
the  "racketeering  activities"  of  certain  individuals  in  the  California  Attorney  General's
Office,  are  substantially  similar  to  the  allegations  contained  in  the  Second  Amended
Complaint.  The allegations suffer from the same defects identified in the Court's April 9,
2010 order:

> Gibson alleges that 42 U.S.C. § 1997e violates the First, Seventh, and Ninth
> Amendments and is an unlawful Bill of Attainder.  According to Gibson, §
> 1997e has made it impossible for him to find legal counsel and its purpose is
> "to punish incarcerated person[s]."   (Dkt. #11 at 14).   To state a claim of
> denial  of  access  to  the  courts,  a  prisoner  "must  identify  a  'nonfrivolous,'
> 'arguable'  underlying  claim"  that  the  prisoner  has  been  or  will  be  unable  to
> pursue  properly  because  the  defendant's  actions  have  denied  the  prisoner
> meaningful access to the courts.  *See, e.g.*, *Christopher v. Harbury*, 536 U.S.
> 403, 415 (2002) (quoting *Lewis v. Casey*, 518 U.S. 343, 353 n.3 (1996)).
> Here, Gibson alleges only a "[p]attern of [r]acketeering [a]ctivity" by certain
> attorneys in the California Attorney General's Office in other civil actions he
> has pursued in court, but not that he has in fact been denied access to the
> courts.  Gibson also fails to identify any legal basis underlying his conclusory
> assertions regarding the constitutionality of 42 U.S.C. § 1997e. He therefore
> fails to state a claim upon which relief can be granted against the California
> Attorney General defendants.
>
> . . . .
>
> Gibson claims that Cal. Penal Code §§ 2600-2601 violate the U.S.
> Constitution  because  they  are  applied  to  him  ex  post  facto.   The  U.S.
> Constitution provides that "No State shall . . . pass any . . . ex post facto Law."
> U.S. Const. art. I, § 10.  The Ex Post Facto Clause is violated if: (1) state
> regulations  have  been  applied  retroactively  to  a  defendant;  and  (2)  the  new
> regulations  have  created  a  "sufficient  risk"  of  increasing  the  punishment
> attached to the defendant's crimes.  *Himes v. Thompson*, 336 F.3d 848, 854

1  (9th Cir. 2003).  In order to violate the clause, the law in question must
2  essentially alter "the definition of criminal conduct" or increase the
   "punishment for the crime."  *Lynce v. Mathis*, 519 U.S. 433, 442 (1997).
3          Here, Gibson alleges that prison regulations regarding "medical care,
   food, clothing and other living conditions or housing needs" are stricter now
4  than at the time he was sentenced.  (Dkt. #11 at 16).  He does not, however,
   allege that the new regulations have created a sufficient risk of increasing his
5  punishment.  He therefore fails to state a claim upon which relief can be
   granted.

6  Dkt. #14 at 9–10.

7          Although Gibson alleges for the first time in his Third Amended Complaint that Cal.

8  Penal Code §§ 2600–2601, which govern certain prisoner rights, "[h]ave created a sufficient

9  risk of increasing the plaintiff's current sentence or punishment," Gibson fails to explain how

10 the application of Cal. Penal Code §§ 2600–2601 creates any risk of increasing his term of

11 imprisonment and thus fails to state a claim upon which relief can be granted.  *See Iqbal*, 129

12 S. Ct. at 1949 ("Threadbare recitals of the elements of a cause of action, supported by mere

13 conclusory statements, do not suffice."); *see also Cal. Dep't of Corrections v. Morales*, 514

14 U.S. 499, 506 n. 3 (1995) ("[T]he focus of the ex post facto inquiry is not on whether a

15 legislative change produces some ambiguous sort of 'disadvantage,' . . . but on whether any

16 such change alters the definition of criminal conduct or increases the penalty by which a

17 crime is punishable.").

18         Additionally, although the complaint includes citations to a Harvard Law Review

19 article that 42 U.S.C. § 1997(e) makes it difficult for prisoners to file lawsuits and to other

20 prisoner's declarations concerning their problems with prison grievance procedures, Gibson

21 fails to state a claim as he fails to allege that *he* suffered any specific injury as a result of any

22 defendant's specific conduct.  *See Lewis v. Casey*, 518 U.S. 343, 351–52 (1996); *Lujan v.*

23 *Defenders of Wildlife*, 504 U.S. 555, 574-78 (generalized grievances about the proper

24 application of laws does not support standing).  Moreover, a prisoner does not have a

25 protected liberty interest in prison grievance procedures.  *See Mann v. Adams*, 855 F.2d 639,

26 640 (9th Cir. 1988).

27         The allegations in Gibson's Third Amended Complaint regarding his "botched" liver

28 biopsy are also identical to, and suffer from the same defects as, the allegations in the Second

Amended Complaint, as identified by the Court in its April 9, 2010 order dismissing the

complaint:

> Gibson also alleges that a "botched" biopsy was performed in "total disregard
> for [his] safety and health" and "caus[ed] [him] unnecessary pain and delay in
> his treatment." ([Dkt. #11] at 12). He does not, however, explain how his
> biopsy was "botched" or allege facts sufficient to support his conclusory
> allegations concerning the harm caused by the biopsy or the defendants'
> alleged deliberate indifference to his medical needs. Gibson therefore fails to
> state a claim under the Eighth Amendment based on medical treatment.

Dkt. #14 at 8. As the Court noted in its April 9 order, "claims of 'indifference,' 'negligence,'

or 'medical malpractice' do not constitute deliberate indifference." (*Id.*) (quoting *Broughton*

*v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980)). Thus, Gibson once more fails to state

a claim.

Finally, to the extent that Gibson claims for the first time in his Third Amended

Complaint that the Office of Administrative Law violated his equal protection rights by

"refus[ing] to order the repeal" of certain provisions of the California Code of Regulations

(Dkt. #18 at 25–26), he fails to allege that he was intentionally discriminated against based

upon membership in a protected class. *See Barren v. Harrington*, 152 F.3d 1193, 1194 (9th

Cir. 1998) ("To state a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection

Clause of the Fourteenth Amendment a plaintiff must show that the defendants acted with

an intent or purpose to discriminate against the plaintiff based upon membership in a

protected class."). Conclusory statements of unequal treatment are insufficient to state a

claim. *Iqbal*, 129 S.Ct. at 1949. Thus, Gibson fails to state a claim upon which relief may

be granted.

### C.    Eighth Amendment

Gibson claims that the defendants violated the Eighth Amendment bar against cruel

and unusual punishment. Specifically, Gibson alleges that the defendants failed to provide

him timely medical treatment and that the prison food is unsanitary. (Dkt. # 18 at 10–12,

14–17).

To state a claim against a prison official under the Eighth Amendment a plaintiff must

establish that: (1) "the deprivation alleged . . . [is] sufficiently serious" under an objective

standard, and (2) the "prison official [] ha[d] a sufficiently culpable state of mind" under a subjective standard. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotation marks and citation omitted). The objective requirement is met where the "prison official's act or omission [] result[s] in the denial of the minimal civilized measure of life's necessities." *Id.* (internal quotation marks and citation omitted). The subjective requirement is met where the prison official acts with "deliberate indifference to inmate health or safety." *Id.* (internal quotation marks and citation omitted). A prison official acts with deliberate indifference when he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. Furthermore, deliberate indifference is a higher standard than negligence or lack of ordinary due care. *Id.* at 835.

### i. Prison Food

Gibson alleges that the food at the Salinas Valley State Prison is "delivered in uncovered pans carried outdoor in the rain," "sodium-laced," and "routinely prepared very badly." (Dkt. #18 at 15). Gibson also alleges that his "brown bag" lunches are constantly missing items. (*Id.* at 16). As explained by the Court in its previous order dismissing Gibson's Second Amended Complaint, however, "[t]he Eighth Amendment requires only that prisoners receive food that is adequate to maintain health; it need not be tasty or aesthetically pleasing." *LeMaire v. Maass*, 12 F.3d 1444, 1456 (9th Cir. 1993). Gibson does not specifically allege that his health has been negatively affected as a result of the missing items in his "brown bag" lunches, the way the prison food is served, or its allegedly high sodium content. To the extent that Gibson does allege that the prison food is "contributing to [his] bad health" (Dkt. #18 at 15), this allegation appears to relate to Gibson's allegation that the medical treatment for his Hepatitis C infection requires a "high protein and caloric diet," not the normal prison diet (*id.* at 17), to be effective, and will be discussed in the section below.

1    Gibson also alleges that he once became sick from eating rotten eggs, once found

2    insect remains in his cereal, and once received spoiled orange sherbet (that he did not

3    consume).  (Dkt. #18 at 16).  But "[t]he fact that the food occasionally contains foreign

4    objects or sometimes is served cold, while unpleasant, does not amount to a constitutional

5    deprivation."  *LeMaire*, 12 F.3d at 1456 (internal quotation marks omitted).  Gibson's

6    allegations do not establish a "sufficiently serious" deprivation of "the minimal civilized

7    measure of life's necessities."  *Farmer*, 511 U.S. at 834 (internal quotation marks omitted);

8    *cf. Anderson v. County of Kern*, 45 F.3d 1310, 1314 (9th Cir. 1995) ("[S]ubjection of a

9    prisoner to lack of sanitation that is *severe or prolonged* can constitute an infliction of pain

10   within the meaning of the Eighth Amendment.") (emphasis added).  Furthermore, Gibson

11   does not identify what facts the defendants knew about spoiled or contaminated food or

12   whether they deliberately ignored a risk that the food was inadequate to maintain his health.

13   *See Farmer*, 511 U.S. at 834.  Thus, Gibson fails to state a claim upon which relief can be

14   granted.

15                    ii.  Medical Treatment

16          As explained by the Court in its previous order dismissing Gibson's Second Amended

17   Complaint, a prison official violates the Eighth Amendment when he acts with "deliberate

18   indifference to serious medical needs of prisoners."  *Estelle v. Gamble*, 429 U.S. 97, 104

19   (1976).  In his Third Amended Complaint, Gibson alleges that he has Hepatitis C, surely a

20   serious medical need.[3]  The question then, as with the Second Amended Complaint, is

21   _____

22          [3]To establish a "serious medical need," a plaintiff must "demonstrat[e] that failure to
     treat [his or her] condition could result in further significant injury or the unnecessary and
23   wanton infliction of pain."  *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal
     quotation marks omitted).  Gibson alleges only that "many experts *recommend* drug
24   treatment," and that "[o]nce a patient is determined to have chronic hepatitis, then he *should
     be* treated with a combination of two drugs," Pegylated interferon and ribavirin.  (Dkt. #18
25   at 9) (emphasis added).  Although a Hepatitis C infection can "quite obviously cause serious
     health problems," *Andrews v. Cervantes*, 493 F.3d 1047, 1055 (9th Cir. 2007), Gibson does
26   not allege that failure to treat his Hepatitis C infection with Pegylated interferon and ribavirin
     "could result in further significant injury or the unnecessary and wanton infliction of pain."
27   *Jett*, 439 F.3d at 1096.  Nor does he allege that he has been diagnosed as requiring treatment
28

1   whether the allegations in the Third Amended Complaint meet the requisite standard for

2   deliberate indifference.

3       To establish deliberate indifference a plaintiff must show both "a [defendant's]

4   purposeful act or failure to respond to a prisoner's pain or possible medical need and . . .

5   harm caused by the indifference." *Jett*, 439 F.3d at 1097.  Deliberate indifference is a

6   subjective standard: "the official must both be aware of facts from which the inference could

7   be drawn that a substantial risk of serious harm exists, and he must also draw the inference."

8   *Farmer*, 511 U.S. at 834.  Thus, an "official's failure to alleviate a significant risk that he

9   should have perceived but did not, . . . cannot . . . be condemned as the infliction of

10  punishment."  *Id.* at 838; *see id.* at 835–36 & n.4 (equating deliberate indifference with

11  reckless disregard).

12      "Prison officials are deliberately indifferent to a prisoner's serious medical needs

13  when they 'deny, delay or intentionally interfere with medical treatment.'" *Lopez*, 203 F.3d

14  at 1131 (quoting *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988)).  "[T]o

15  prevail on a claim involving choices between alternative courses of treatment, a prisoner

16  must show that the chosen course of treatment 'was medically unacceptable under the

17  circumstances,' and was chosen 'in conscious disregard of an excessive risk to the prisoner's

18  health.'"  *Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004) (quoting *Jackson v.

19  McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996)); *see Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir.

20  1989) (mere disagreement with treatment does not support a claim of deliberate

21  indifference).

22      Here, Gibson alleges that "[i]f [a] patient is infected with genotype 1[b], then he

23  should be offered a liver biopsy," that he has Hepatitis C genotype 1b, and "[o]nce [the]

24  patient is determined to have chronic hepatitis, then he should be [treated] with a

25  combination of two drugs"—"Pegylated interferon and Ribavirin for 48 weeks for genotype

26

27  for his infection.  Nonetheless, as Gibson also alleges that he is now being treated with
    Pegylated interferon and ribavirin, the Court will assume that he has been diagnosed as
28  requiring such treatment, and that failure to treat Gibson with such medication could result
    in significant injury.

1[b]." (Dkt. #18 at 9). Gibson acknowledges that he received multiple liver biopsies and is now being treated with Pegylated interferon and ribavirin. (*Id.*). Nonetheless, he alleges that "[t]he defendant's scheme of years of inaction and delay has guaranteed that any treatment will fail." (*Id.* at 12).

First, Gibson does not allege that he had chronic hepatitis—or that the defendants knew or should have known, and deliberately disregarded, that he had chronic hepatitis—before the defendants began treating him with a combination of Pegylated interferon and ribavirin. *See generally Jett*, 439 F.3d at 1096 ("[T]he plaintiff must show . . . . (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference."). Second, Gibson does not allege that the defendants' delay in treating him with Pegylated interferon and ribavirin was "medically unacceptable" and done "in conscious disregard of an excessive risk to [his] health."[4] *Toguchi*, 391 F.3d at 1058. Thus, Gibson fails to state a claim under the Eighth Amendment for delay in his medical treatment.[5]

---

[4]Gibson states in his Third Amended Complaint that "[i]t's allege[d] that the medical treatment *now being received* is medically unacceptable," citing the Court's April 9, 2010 order. (Dkt. #18 at 12) (emphasis added). As previously discussed, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim. *Iqbal*, 129 S. Ct. at 1949. Additionally, elsewhere in his Third Amended Complaint, Gibson states only that "[o]nce a patient is determined to have chronic [H]epatitis [C genotype 1b], then he should be treated with . . . Pegylated interferon and [r]ibavirin." Gibson states, however, that he is now being treated with Pegylated interferon and ribavirink, and he does not advocate for any other course of treatment. (Dkt. #18 at 9). Furthermore, Gibson does not allege that the failure to treat a patient who is diagnosed with chronic Hepatitis C genotype 1b with Pegylated interferon and ribavirin is "medically unacceptable."

[5]Gibson cites to a September 2008 memorandum from Terry Hill, M.D., Chief Executive Officer, Medical Services, California Prison Health Care Receivership, alleging that "[t]he Defendant's policies to delay and to deny care have been intentionally promulgated and [executed] for financial reasons in complete disregard for the medical needs of [p]risoners infected with [Hepatitis C]." (Dkt. #18 at 9). The memorandum states that liver biopsies are required for prisoners with Hepatitis C genotype 1, "[r]estrictions based on age or the ALT level ha[ve] been removed from the exclusion criteria," and "[a] multidisciplinary team will be responsible for continuity fo care, close laboratory monitoring

Gibson also alleges that "the Defendants are . . . engaged in conditioning [his] medical treatment upon a dress code." (Dkt. #18 at 10).  Specifically, Gibson alleges that "failure to comply with [the prison] dress code is grounds for the . . . cancell[ation] [of] medical appointments and treatment," and that one of his medical appointments was cancelled because he "did not have a pair of cheap dirty State issued tennis shoes, [but] instead . . . had on a pair of new, clean white, (personal bought) tennis shoes." (*Id.*).  Gibson does not allege, however, that he suffered a specific injury as a result of the enforcement of the prison's dress code and the cancellation of one of his medical appointments. *See Rizzo*, 423 U.S. at 377; *Jett*, 439 F.3d at 1096.  Additionally, Gibson does not allege that any of the defendants knew or should have known, and deliberately disregarded, a substantial risk of serious harm as a result of the enforcement of the prison's dress code and the cancellation of one of Gibson's medical appointments. *See Farmer*, 511 U.S. at 834.  Therefore, Gibson fails to state a claim.

Finally, Gibson alleges that his medical treatment "requires a high protein and caloric diet, not [the] mush and gruel[] of every type and description[]" that he currently receives in prison,[6] and that "without an adequate diet[,] [his medical treatment] may not work." (Dkt. #18 at 17).  Deliberate indifference may be established by showing that prison officials intentionally interfered with a prisoner's prescribed medical treatment. *See Estelle*, 429 U.S. at 105.  Gibson fails to allege, however, that any of the defendants knew or should have known, and deliberately disregarded, a substantial risk of serious harm as a result of his

---

of inmate-patients on treatment, and care coordination with mental health, transplant, specialists, peer educators, and other disciplines involved in the inmate-patient's care." Although the memorandum references removing certain "former recommendations" concerning the "exclusion criteria," Gibson fails to allege that he was denied any medical treatment under the former recommendations, that they delayed or interfered with his prescribed medical treatment, or that they were medically unacceptable under the circumstances.

[6]Documents attached to the Third Amended Complaint indicate that Gibson has been prescribed "[a] 2500 calorie per day heart healthy diet [that is] compliant with [his] medical conditions of hypertension and hepatitis C." (Dkt. #18, Exh. December 8, 2009 Director's Level Appeal).

1   current prison diet. *See Farmer*, 511 U.S. at 834. Accordingly, Gibson's allegations, viewed

2   in the light most favorable to him, are not sufficient to support a finding that prison officials

3   intentionally interfered with his prescribed treatment.

4              iii.  Prison Environment

5       Gibson alleges that the Warden and Chief Medical Officer at the prison have instituted

6   policies that allow guards to "yell and scream at [Gibson] during medical visits while [he]

7   is under the influence of powerful anti-viral drugs," telling him to do things like, 'Pull up

8   your pants,' 'No wearing of hats in the building,' [and] 'Hands behind your back[.]'" (Dkt.

9   #18 at 14).

10      A prisoner's allegation that prison guards verbally abuse or make "disrespectful and

11  assaultive comments" to him or her generally does not violate the Eighth Amendment.

12  *Keenan v. Hall*, 83 F.3d 1083, 1092 (9th Cir. 1987) (internal quotation marks omitted). In

13  addition, although Gibson alleges that the prison guards' conduct "guarantees serious liver

14  damage, cirrhosis of the liver, liver failure, [and] hepatocellular carcinoma (cancer)" (Dkt.

15  #18 at 11), he has not alleged that he has actually suffered any injury as a result of the

16  guard's conduct or shown an affirmative link between an injury and the guard's conduct.

17  *Rizzo*, 423 U.S. at 377. Moreover, Gibson does not identify what facts the defendants were

18  aware of and whether they knew—and deliberately ignored—a risk that the guards' conduct

19  negatively affects his health. *Farmer*, 511 U.S. at 834. Therefore, Gibson fails to state a

20  claim.

21      **D.     Supervisory Liability**

22      Gibson asserts several claims against "defendants" generally and defendants in their

23  supervisory capacity. As the Court informed Gibson in its April 9, 2010 order, however,

24  "[t]he inquiry into causation must be individualized and focus on the duties and

25  responsibilities of each individual defendant whose acts or omissions are alleged to have

26  caused a constitutional deprivation." *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988). For

27  that reason, there is no respondeat superior liability under 42 U.S.C. § 1983. *See, e.g.*,

28  *Palmer v. Sanderson*, 9 F.3d 1433, 1437–38 (9th Cir. 1993); *Monell v. Dep't of Social*

1  *Services of City of New York*, 436 U.S. 658, 692 (1978).  A supervisory official may be liable

2  under § 1983 only if he or she personally participated in the constitutional deprivation

3  alleged, or if there was a sufficient causal connection between the supervisor's conduct and

4  the deprivation.  *Redman v. County of San Diego*, 942 F.2d 1435, 1446–47 (9th Cir. 1991);

5  *see Cunningham v. Gates*, 229 F.3d 1271, 1292 (9th Cir. 2000).  Therefore, it is insufficient

6  for Gibson to allege, for example, only that "[t]he *Defendant's* policies to delay and to deny

7  care have been intentionally promulgated . . . in complete disregard for the medical needs of

8  [p]risoners infected with [Hepatitis C]" (Dkt. #18 at 9) (emphasis added), and "[t]he delays

9  and hinderence [sic] of the *Defendants* and their many predessors [sic] has cause[d] the

10  Plaintiff irreparable harm and then the *Defendants* are now engaged in conditioning the

11  Plaintiff['s] medical treatment upon a dress code" (*id.* at 10) (emphasis added).  Rather, if

12  Gibson chooses to amend his complaint once more, he must explain or describe the specific

13  acts or omissions of *each* defendant in connection with *each* alleged constitutional

14  deprivation.

15  **IV.    Warnings**

16      **A.    Address Changes**

17      Gibson must file and serve a notice of a change of address in accordance with Rules

18  83-182(f) and 83-183(b) of the Local Rules of the United States District Court of the Eastern

19  District of California.  Gibson must not include a motion for relief with a notice of change

20  of address.  Failure to comply these rules may result in dismissal of this action.  *See* L.R. 83-

21  183(b).

22      **B.    Copies**

23      Gibson must submit an additional copy of every filing for use by the Court.  *See*

24  LRCiv 5-133(d)(2).  Failure to comply may result in the filing being stricken without further

25  notice to Gibson.

26      **C.    Possible "Strike"**

27      Because the First Amended Complaint has been dismissed for failure to state a claim,

28  if Gibson fails to file an amended complaint correcting the deficiencies identified in this

1    Order, the dismissal will count as a "strike" under the "3-strikes" provision of 28 U.S.C. §

2    1915(g).  Under 28 U.S.C. § 1915, a prisoner may not bring a civil action *in forma pauperis*

3    "if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any

4    facility, brought an action or appeal in a court of the United States that was dismissed on the

5    grounds that it was frivolous, malicious, or fails to state a claim upon which relief may be

6    granted, unless a prisoner is under imminent danger of serious physical injury."  28 U.S.C.

7    § 1915(g).

8         **D.    Possible Dismissal**

9         If Gibson fails to timely comply with every provision of this Order, including these

10   warnings, the Court may dismiss this case without further notice.  *Ferdik v. Bonzelet*, 963

11   F.2d 1258, 1260–61 (9th Cir. 1992) (a district court may dismiss a case for failure to comply

12   with its orders).

13        **Accordingly,**

14        **IT IS HEREBY ORDERED THAT:**

15        (1)    Plaintiff's Third Amended Complaint (Dkt. #18) is dismissed for failure to

16   state a claim.  Plaintiff is granted leave to amend his complaint and may file a Fourth

17   Amended Complaint in compliance with this Order no later than **30 days** from the date this

18   Order is filed.  If Plaintiff chooses to amend his complaint and the Court determines that the

19   amended complaint is frivolous, malicious, or fails to state a claim, it will be dismissed with

20   prejudice pursuant to 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2) and count as a "strike" under

21   28 U.S.C. § 1915(g).  Alternatively, Plaintiff may elect to dismiss this action by filing a

22   Notice of Dismissal pursuant to FED. R. CIV. P. 41(a)(1)(A) no later than **30 days** from the

23   date this Order is filed.  Plaintiff is warned, however, that "if [he] previously dismissed any

24   federal-or state-court action based on or including the same claim[s asserted in this action],

25   [the] notice of dismissal [will] operate[] as an adjudication on the merits."  FED. R. CIV. P.

26   41(a)(1)(B).

27        (2)    The Clerk of the Court shall send Plaintiff a Prisoner Complaint form along

28   with this Order.

1    (3)    If Plaintiff fails to file an amended complaint or a Notice of Dismissal within

2   30 days from the date this Order is filed, the Clerk of the Court shall, without further notice,

3   enter a judgment of dismissal stating that the dismissal counts as a "strike" under 28 U.S.C.

4   § 1915(g).

5

6    DATED this 8th day of July, 2010.

7

8                                        /s/ Marsha S. Berzon

                                          MARSHA S. BERZON

9                                        United States Circuit Judge, sitting by designation

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28