IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT D. GIBSON, | Case No. 2:09-cv-00230-MSB |
| Plaintiff, | **ORDER** |
| vs. | |
| CHIEF MEDICAL OFFICER, C.D.C.R., *et al.*, | |
| Defendants. | |

Plaintiff Robert D. Gibson, who is currently confined in the Salinas Valley State Prison in Soledad, CA, has filed an amended *pro se* civil rights complaint under 42 U.S.C. § 1983 (Dkt. #26). That complaint was filed pursuant to the Court's July 9, 2010 order dismissing Gibson's Third Amended Complaint for failure to state a claim upon which relief may be granted and granting him leave to amend his complaint (Dkt. #19). After screening the complaint pursuant to 28 U.S.C. § 1915A, the Court dismisses with prejudice the Fourth Amended Complaint (Dkt. #26) for failure to state a claim upon which relief may be granted.

**I.     Statutory Screening of Prisoner Complaints**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, fails to state a claim upon which relief may be

granted, or seeks monetary relief from a defendant who is immune from such relief. *Id.* at § 1915A(b)(1), (2).

## II.   **Fourth Amended Complaint**

In his Fourth Amended Complaint,[1] Gibson presents two causes of action. First, he alleges that the defendants have violated the Eighth Amendment because they provide him medically substandard treatment for his Hepatitis C infection. Second, he alleges that the prison's poor food diet and unsanitary conditions violate the Eighth Amendment. (Dkt. #26 at 17). While not listed as a cause of action, Gibson also claims that the California Office of Administrative Law violated his Fourteenth Amendment equal protection rights by refusing to order the repeal of certain provisions of the California Code of Regulations. These causes of action were also included in Gibson's Third Amended Complaint, and were dismissed as inadequately pleaded.[2] (Dkt. #18 at 27-28).

Gibson names the following parties as defendants: (1) Robin Dezember, the Secretary of the Division of Correctional Health Care Services of the California Department of Corrections and Rehabilitation (Dkt. #26 at 2); (2) the Chief Dietitian of the California Department of Corrections (*id.*); (3) the Warden of the Salinas Valley State Prison (*id.* at 3); (4) the Chief Medical Officer of the Salinas Valley State Prison (*id.*); (5) the Food Manager

---

[1] Gibson amended his complaint as a matter of course under FED. R. CIV. P. 15(a)(1) (Dkt. #5), and the Court granted his motion to file a Second Amended Complaint under FED. R. CIV. P. 15(a)(2). The Court screened the Second Amended Complaint under 28 U.S.C. § 1915A and dismissed it without prejudice for failure to state a claim. (Dkt. ## 11, 14). Upon screening Gibson's Third Amended Complaint, the Court determined that the allegations in the complaint were insufficient to state a claim for relief. The Court dismissed the complaint and granted Gibson leave to amend his complaint one final time. (Dkt. #19).

[2] The Third Amended Complaint included additional causes of actions and defendants not included in the Fourth Amended Complaint. (Dkt. #18 at 27-28).

1  of the Salinas Valley State Prison (*id.* at 3); and (6) Susan Lapsey, Director of the Office of
2  Administrative Law (*id.* at 4).[3]

3  Gibson's allegations are nearly identical to allegations contained in his Third
4  Amended Complaint. Gibson alleges that he has Hepatitis C genotype 1b, which is an
5  infectious disease affecting the liver. (Dkt. #26 at 6). According to Gibson, the Hepatitis C
6  virus "is responsible for nearly 70 percent of chronic liver disease and 50 percent of liver
7  cirrhosis, and end stage disease, and eventually cancer of the liver." (*Id.*). Gibson alleges
8  that "[i]f [a] patient is infected with genotype 1, then he should be offered a liver biopsy,"
9  and "[o]nce [the] patient is determined to have chronic hepatitis, then he should be [treated]
10 with a combination of two drugs"—"Pegylated interferon and Ribavirin for 48 weeks for
11 genotype 1[b]." (*Id.* at 7).

12 Gibson states that as of March 16, 2010, the defendants began treating him with
13 Pegylated interferon and ribavirin. (*Id.*). But according to Gibson, "the delay has been too
14 great and injury has occurred." (*Id.*). Specifically, Gibson alleges that the "delays and
15 hind[rance] of the treatment . . . cause him irreparable harm" because "[t]he Defendants[']
16 policies guarantee[] serious liver damage, cirrhosis of the liver and liver failure, [and]
17 hepatocellular carcinoma." (*Id.* at 8).

18 Gibson also alleges that the defendants instituted a "dress code" that restricted his
19 medical care. (*Id.* at 9). Specifically, he "attempted to go to a medical appointment . . . .
20 [and] didn't have a cheap dirty pair of State issued canvas tennis shoes." (*Id.* at 8). His
21 medical appointment was "cancelled" because he "wore a pair of white, new, leather,
22 (personal tennis shoes)." (*Id.*). Additionally, Gibson alleges that the defendants "search for
23 ways to degrade prisoners during their medical visits and cause them stress during medical
24 procedures" causing Gibson "a) fever, b) fatigue, c) irritability, d) body & muscle pain."
25 (*Id.*). Namely, Gibson alleges that the defendants "train and condone their staff [y]elling at

---

[3] These parties were all included, along with several other named defendants, in Gibson's Third Amended Complaint. (Dkt. #18 at 2-7).

- 3 -

[patients] . . . for petty reasons" and that defendants "have instituted all manner of restrictions to access to healthcare, design[ed] to harass, torture and torment the plaintiff." (*Id.*).

Gibson further alleges that the prison food is unsanitary and "contribut[es] to [his] bad health." (*Id.* at 13). According to Gibson, the prison food is sometimes stored outdoors and left uncovered, and is "sodium laced" and "lacks any nutritional value." (*Id.*). Gibson alleges that the food items are consistently missing from his daily "sack lunch;" that he was once "made sick" from "rotten boiled eggs;" that he once found insect remains in his cereal; and that he once received orange sherbet that was "spoiled" and "would have caused [him] food poisoning" if he had consumed it. (*Id.* at 12). Furthermore, Gibson alleges that his medical treatment "requires a high protein and caloric diet, not [the] mush and gruel[] of every type and description[]" that he receives in prison, and, "without an adequate diet[,] [his medical treatment] may not work." (*Id.* at 14). Gibson alleges that these incidents have "taken a psychological toll" on him and caused him to become "anemic." (*Id*. at 12).

Finally, Gibson alleges that the California Office of Administrative Law violated his equal protection rights by "refus[ing] to order the repeal" of parts of the California Code of Regulations. (*Id.* at 11, 15-16).

**III.   Discussion**

42 U.S.C. § 1983 provides a cause of action against persons acting under color of state law who have violated rights guaranteed by the U.S. Constitution. *Buckley v. City of Redding*, 66 F.3d 188, 190 (9th Cir. 1995); *Demery v. Kupperman*, 735 F.2d 1139, 1146 (9th Cir. 1984). To state a claim for relief under § 1983, a plaintiff must allege that he suffered a specific injury as a result of a defendant's specific conduct and show an affirmative link between the injury and that defendant's conduct. *See Rizzo v. Goode*, 423 U.S. 362, 371-72, 377 (1976).

**A.   Pleading Standard**

*Pro se* pleadings are liberally construed. *Hains v. Kerner*, 404 U.S. 519, 520-21 (1972). Nonetheless, a *pro se* plaintiff must satisfy the pleading standard set forth in the

- 4 -

Federal Rules of Civil Procedure, which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). While Rule 8 does not demand detailed factual allegations, a complaint will not suffice "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). In other words, a complaint must plead sufficient "*factual content* that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (emphasis added).

### B. Eighth Amendment Claims

To state a claim against a prison official under the Eighth Amendment a plaintiff must establish that: (1) "[T]he deprivation alleged . . . [is] sufficiently serious" under an objective standard, and (2) the "prison official [] ha[d] a sufficiently culpable state of mind" under a subjective standard. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotation marks and citation omitted). The objective requirement is met where the "prison official's act or omission [] result[s] in the denial of the minimal civilized measure of life's necessities." *Id.* (internal quotation marks and citation omitted). The subjective requirement is met where the prison official acts with "deliberate indifference to inmate health or safety." *Id.* (internal quotation marks and citation omitted). A prison official acts with deliberate indifference when he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

As explained below, Gibson's claims that the defendants violated the Eighth Amendment bar against cruel and unusual punishment are virtually identical to the allegations contained in the Third Amended Complaint. In each instance, he has not corrected the defects identified in the Court's July 7, 2010 order.

    i. Prison Food

As in his Third Amended Complaint, Gibson alleges that the food at the Salinas Valley State Prison is "delivered in uncovered pans carried outdoor in the rain," "sodium-laced," and "routinely prepared very badly." (Dkt. #26 at 13). Gibson also alleges that his "sack lunch[es]" are constantly missing items. (*Id.* at 12).

In the July 9, 2010 order dismissing Gibson's Third Amended Complaint, the Court explained that "[t]he Eighth Amendment requires only that prisoners receive food that is adequate to maintain health; it need not be tasty or aesthetically pleasing." (Dkt. #19 at 10 (quoting *LeMaire v. Maass*, 12 F.3d 1444, 1456 (9th Cir. 1993))).

> "The fact that the food occasionally contains foreign objects or sometimes is served cold, while unpleasant, does not amount to a constitutional deprivation." *LeMaire*, 12 F.3d at 1456 (internal quotation marks omitted). Gibson's allegations do not establish a "sufficiently serious" deprivation of "the minimal civilized measure of life's necessities." *Farmer*, 511 U.S. at 834 (internal quotation marks omitted); *cf. Anderson v. County of Kern*, 45 F.3d 1310, 1314 (9th Cir. 1995) ("[S]ubjection of a prisoner to lack of sanitation that is *severe or prolonged* can constitute an infliction of pain within the meaning of the Eighth Amendment.") (emphasis added)).

(Dkt. #19 at 10).

The Court dismissed Gibson's Third Amended Complaint because Gibson had failed specifically to allege that his health had been negatively affected by the missing items in his "brown bag" lunches, the way the prison food is served, or its allegedly high sodium content. Furthermore, Gibson did not allege that the defendants were aware of, but ignored, a substantial risk regarding the safety of the prison food or its adequacy. *Farmer*, 511 U.S. at 834.

The Fourth Amended Complaint now alleges that on August 24, 2010, Gibson "was diagnosed as '[a]nemic' from lack of clean and palatable food, and lost [] 20 pounds from March 2010 to August. Conta[]minated [f]ood will cause malnutrition then death." (Dkt. #26 at 9, 12). Even assuming that this allegation is sufficient to satisfy the objective prong of the Eighth Amendment test, Gibson still fails to make any allegations as to what facts the defendants knew about spoiled or contaminated food or whether they deliberately ignored a substantial risk that the quality of the food threatened a serious risk of harm to Gibson's

health. Thus, Gibson fails to state a claim because he has not adequately alleged that prison officials "ha[d] a sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834.

To the extent that Gibson alleges that the prison food negatively affects his medical treatment for his Hepatitis C infection, this claim is discussed in the section below.

### ii. Medical Treatment

As explained by the Court in its previous order dismissing Gibson's Third Amended Complaint, a prison official violates the Eighth Amendment when he acts with "deliberate indifference to serious medical needs of prisoners." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). As in his Third Amended Complaint, Gibson continues to allege that he has Hepatitis C, which is a serious medical need.[4] And as in his Third Amended Complaint, the question continues to be whether the allegations in the Fourth Amended Complaint meet the requisite standard for deliberate indifference.

The Court explained the deliberate indifference standard in its prior order:

> To establish deliberate indifference a plaintiff must show both "a [defendant's] purposeful act or failure to respond to a prisoner's pain or possible medical need and . . . harm caused by the indifference." *Jett*, 439 F.3d at 1097. Deliberate indifference is a subjective standard: "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 834. Thus, an "official's failure to

---

[4] To establish a "serious medical need," a plaintiff must "demonstrat[e] that failure to treat [his or her] condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal quotation marks omitted). Although a Hepatitis C infection can "quite obviously cause serious health problems," *Andrews v. Cervantes*, 493 F.3d 1047, 1055 (9th Cir. 2007), the Court in its Order dismissing Gibson's Third Amended Complaint noted that Gibson did not allege that failure to treat his Hepatitis C infection with pegylated interferon and ribavirin "could result in further significant injury or the unnecessary and wanton infliction of pain." *Jett*, 439 F.3d at 1096. Nor did he allege that he had been diagnosed as requiring treatment for his infection. But because Gibson alleged that he was being treated with pegylated interferon and ribavirin, the Court assumed that he had been diagnosed as requiring such treatment, and that failure to treat Gibson with such medication could result in significant injury. Gibson makes identical allegations as to his Hepatitis C diagnoses and treatment in his Fourth Amended Complaint, and the Court makes the same assumption that it made in its July 9, 2010 order.

>alleviate a significant risk that he should have perceived but did not, . . . cannot . . . be condemned as the infliction of punishment." *Id.* at 838; *see id.* at 835–36 & n.4 (equating deliberate indifference with reckless disregard).
>
>"Prison officials are deliberately indifferent to a prisoner's serious medical needs when they 'deny, delay or intentionally interfere with medical treatment.'" *Lopez* [*v. Smith*], 203 F.3d [1122] at 1131 [9th Cir. 2000] (quoting *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988)).

(Dkt. #19 at 11).

As in his Third Amended Complaint, Gibson continues to allege that "if the patient is infected with genotype 1, then he should be offered a liver biopsy," that he has Hepatitis C genotype 1b, and that "[o]nce [the] patient is determined to have chronic hepatitis, then he should be [treated] with a combination of two drugs"—"Pegylated interferon and Ribavirin for 48 weeks for genotype 1[b]." (Dkt. #26 at 7). Gibson acknowledges that he received multiple liver biopsies and is now being treated with Pegylated interferon and ribavirin. (*Id.*). Nonetheless, he alleges that "[t]he defendant's scheme of years of inaction and delay has guaranteed that any treatment will fail." (*Id.* at 12).

In its July 9, 2010 order, the Court held that these allegations in Gibson's Third Amended Complaint failed to state a claim for two reasons:

>First, Gibson does not allege that he had chronic hepatitis—or that the defendants knew or should have known, and deliberately disregarded, that he had chronic hepatitis—before the defendants began treating him with a combination of Pegylated interferon and ribavirin. *See generally Jett*, 439 F.3d at 1096 ("[T]he plaintiff must show . . . . (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference."). Second, Gibson does not allege that the defendants' delay in treating him with Pegylated interferon and ribavirin was "medically unacceptable" and done "in conscious disregard of an excessive risk to [his] health." *Toguchi*, 391 F.3d at 1058.

(Dkt. #26 at 12).

The Fourth Amended Complaint does not correct these defects because Gibson makes no allegations as to whether he had chronic hepatitis for any substantial period before the defendants began treating him, and Gibson does not allege that the defendants knew or should have known and deliberately disregarded Gibson's condition before treating him. Gibson does allege that "[e]verything Prison Officials have done was to undermine

- 8 -

1 [Gibson's] successful treatment." (Dkt. #26 at 10). But this conclusory statement is not sufficient to state a claim because Gibson does not provide any *factual basis* to support the allegation. *See Iqbal*, 129 S. Ct. at 1949.

Gibson also alleges that "medical staff failed to deliver" his required drug treatment on one occasion, and that when he informed "the Nurse on duty of this failure[, he] was met with indignant indifference, [and] she inform[ed] [him] that it was his '[r]egular [n]urse's duty to make sure'" that he received his drug treatment. (Dkt. #26 at 10). This allegation is insufficient to state a claim of deliberate indifference. There is no indication that the nurse, or any other official, "was aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and that [s]he drew the inference." *Farmer*, 511 U.S. at 834. Moreover, even if the facts alleged were sufficient to establish deliberate indifference on the part of the nurse on duty—and they are not—she is not named as a defendant, and Gibson does not allege that any named defendants knew of this incident. Nor does Gibson adequately allege that any harm occurred or that the single delayed treatment threatened a substantial risk of serious harm. Thus, while Gibson may have been wrongfully denied his drug treatment in this instance, this allegation, even if true, does not rise to the level of a *constitutional* violation. *See Jett*, 439 F.3d at 1097.

As in his Third Amended Complaint, Gibson again alleges that one of his medical appointments was cancelled because he was not dressed in accordance with a "dress code." (Dkt. #26 at 9). Namely, he "didn't have a cheap dirty pair of State issued canvas tennis shoes, and instead [he] wore a pair of clean white, new, leather, (personal tennis shoes)." (*Id.* at 8). The Court previously held that Gibson failed to state a claim because:

> Gibson does not allege that he suffered a specific injury as a result of the enforcement of the prison's dress code and the cancellation of one of his medical appointments. *See Rizzo*, 423 U.S. at 377; *Jett*, 439 F.3d at 1096. Additionally, Gibson does not allege that any of the defendants knew or should have known, and deliberately disregarded, a substantial risk of serious harm as a result of the enforcement of the prison's dress code and the cancellation of one of Gibson's medical appointments. *See Farmer*, 511 U.S. at 834."

(Dkt. #26 at 13).

- 9 -

Gibson's Fourth Amended Complaint adds only the allegation that "[f]uture harm can result [from the cancellation of medical appointments,] like the failure to detect adverse effects of the . . . drugs." (Dkt. #26 at 8). Even if true—and the Court assumes that it is—this allegation does not connect to any actual injury. Gibson has not alleged that he has actually suffered an injury as a result of any cancelled appointments. Gibson has also failed to allege that future appointments might be cancelled, and he has not alleged an affirmative link between a specific, likely future injury and the possibility that future appointments might be cancelled. *Rizzo*, 423 U.S. at 377. Gibson has also failed to allege that any of the defendants knew or should have known, and deliberately disregarded, a substantial risk of serious harm with respect to this claim. Therefore, Gibson fails to state a claim.

Finally, as in his Third Amended Complaint, Gibson continues to allege in his Fourth Amended Complaint that his medical treatment "requires a high protein and caloric diet, not [the] mush and gruel[] of every type and description[]" that he currently receives in prison, and that "without an adequate diet[,] [his medical treatment] may not work."[5] (Dkt. #26 at 14).

In the July 9, 2010 order, the Court dismissed this claim in Gibson's Third Amended Complaint because he "fail[ed] to allege . . . that any of the defendants knew or should have known, and deliberately disregarded, a substantial risk of serious harm as a result of his current prison diet." (Dkt. #26 at 13-14 (citing *Farmer*, 511 U.S. at 834)).

Gibson's Fourth Amended Complaint does not correct this defect. Gibson does allege that the "food prison policy is deliberate and design[ed] as a form of contempt for the prison population. It is . . . [a] plot of prison officials to provide such very poor low quality food, that any prisoner with any significant illness will not recover from that disease." (Dkt. #26

---

[5]Documents attached to the Fourth Amended Complaint indicate that Gibson has been prescribed "[a] 2500 calorie per day heart healthy diet [that is] compliant with [his] medical conditions of hypertension and hepatitis C." (Dkt. #26, Exh. December 8, 2009 Director's Level Appeal).

- 10 -

at 14). Absent any factual support for this allegation, however, this conclusory statement is not sufficient to state a claim. *See Iqbal*, 129 S. Ct. at 1949.

### iii. Prison Environment

Gibson alleges that the supervisors at the prison "train and condone their staff [y]elling at [patients] for petty reasons" and that the defendants "search for ways to degrade prisoners during their medical visits and cause them stress during medical procedures." (Dkt. #26 at 9).

As the Court explained in its prior order dismissing Gibson's Third Amended Complaint, a prisoner's allegation that prison guards verbally abuse or make "disrespectful and assaultive comments" generally does not violate the Eighth Amendment. *Keenan v. Hall*, 83 F.3d 1083, 1092 (9th Cir. 1996) (internal quotation marks omitted). (Dkt. #19 at 14). The Court held that Gibson failed to state a claim because:

> although Gibson alleges that the prison guards' conduct "guarantees serious liver damage, cirrhosis of the liver, liver failure, [and] hepatocellular carcinoma (cancer)" (Dkt. #18 at 11), he has not alleged that he has actually suffered any injury as a result of the guard's conduct or shown an affirmative link between an injury and the guard's conduct. *Rizzo*, 423 U.S. at 377. Moreover, Gibson does not identify what facts the defendants were aware of and whether they knew—and deliberately ignored—a risk that the guards' conduct negatively affects his health. *Farmer*, 511 U.S. at 834.

(Dkt. #19 at 14).

In his Fourth Amended Complaint, Gibson cites *Helling v. McKinney*, 509 U.S. 25 (1993) for the proposition that he "does not have to wait on actual injury to occur to have an actionable injury." (Dkt. #26 at 8, 9). Nonetheless, Gibson has failed to allege that he is exposed to an "unreasonable risk with respect to his future health," as *Helling* requires. 509 U.S. at 36. Nor does Gibson allege an affirmative link between a potential injury and the guard's conduct. Finally, Gibson does not identify what facts the defendants were aware of and whether they knew—and deliberately ignored—a risk that their conduct would negatively affect his health. He therefore fails to state a claim.

**C.     Equal Protection**

- 11 -

The allegations in Gibson's Fourth Amended Complaint that the Office of Administrative Law violated his equal protection rights by "refus[ing] to order the repeal" of certain provisions of the California Code of Regulations (Dkt. #26 at 15-16) are identical to the allegations contained in the Third Amended Complaint. These allegations suffer from the same defects identified in the Court's July 9, 2010 order:

> [T]o the extent that Gibson claims . . . that the Office of Administrative Law violated his equal protections rights . . . he fails to allege that he was intentionally discriminated against based upon membership in a protected class. *See Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998) ("To state a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class."). Conclusory statements of unequal treatment are insufficient to state a claim. *Iqbal*, 129 S.Ct. at 1949.

(Dkt. #19 at 8).

Because Gibson has not alleged that he was *intentionally* discriminated against based on membership in a protected class—for instance, that he was intentionally discriminated against on the basis of race or national origin—he has not corrected this defect in the Fourth Amended Complaint, and thus he has failed to state a claim upon which relief could be granted.

### D.  Supervisory Liability

Gibson asserts several claims against "defendants" generally and defendants in their supervisory capacity. As the Court informed Gibson in its April 9, 2010 order and again in its July 9, 2010 order, however, "[t]he inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988). A supervisory official may be liable under § 1983 only if he or she personally participated in the constitutional deprivation alleged, or if there was a sufficient causal connection between the supervisor's conduct and the deprivation. *Redman v. County of San Diego*, 942 F.2d 1435, 1446–47 (9th Cir. 1991); *see Cunningham v. Gates*, 229 F.3d 1271, 1292 (9th Cir. 2000).

As the Court stated in its Court's July 9, 2010 order,

> it is insufficient for Gibson to allege, for example, only that "[t]he *Defendant's* policies to delay and to deny care have been intentionally promulgated . . . in complete disregard for the medical needs of [p]risoners infected with [Hepatitis C]" (Dkt. #18 at 9) (emphasis added), and "[t]he delays and hinderence [sic] of the *Defendants* and their many predessors [sic] has cause[d] the Plaintiff irreparable harm and then the *Defendants* are now engaged in conditioning the Plaintiff['s] medical treatment upon a dress code" (*id.* at 10) (emphasis added). Rather . . . [Gibson] must explain or describe the specific acts or omissions of *each* defendant in connection with *each* alleged constitutional deprivation.

(Dkt. #19 at 15).

The Fourth Amended Complaint retains this defect. Gibson fails to explain the specific acts or omissions of any particular defendant in connection with any particular alleged constitutional deprivation.

**IV.  Conclusions and Order**

Gibson's Fourth Amended Complaint fails to state a claim upon which relief may be granted. Gibson was previously given notice of the deficiencies and several prior opportunities to amend the complaint, but he was unable to cure the deficiencies. Therefore, further leave to amend is not warranted, and it is HEREBY ORDERED that:

(1) Plaintiff's Fourth Amended Complaint (Dkt. #26) is dismissed with prejudice for failure to state a claim. *See* 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2).

(2) The Clerk's Office shall enter judgment; and

(3) This dismissal counts as a "strike" under the "3-strikes" provision of 28 U.S.C. § 1915(g) (a prisoner may not bring a civil action *in forma pauperis* "if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it was frivolous, malicious, or fails to state a claim upon which relief may be granted, unless a prisoner is under imminent danger of serious physical injury.").

DATED this 13th day of December, 2010.

1
2

/s/ Marsha S. Berzon
MARSHA S. BERZON
United States Circuit Judge, sitting by designation